IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PAUL MURPHY,

                Plaintiff,

v.                                                       OPINION & ORDER

DEBORAH RYCHLOWSKI,                                    14-cv-685-jdp
GAIL FAUST, and SUE KLEMANN,

                Defendants.

---

      Plaintiff Paul Murphy was convicted of rape in California in 1980. Under California's Sex Offender Registration Act, Murphy must register as a sex offender for the rest of his life—so long as he resides in California. But now he lives in Wisconsin, which requires that any person "registered as a sex offender in another state" must register in Wisconsin. Murphy contends that his California sex offender registration is now inactive, so he should not have to register in Wisconsin. Murphy brings this suit under 42 U.S.C. § 1983 alleging that defendants, employees of the Wisconsin Department of Corrections (DOC), have violated his due process rights under the United States Constitution by requiring him to register as a sex offender.

      The case is before the court on the parties' cross motions for summary judgment. Murphy contends that he was entitled to a hearing before he could be required to register as a sex offender. But this claim is foreclosed by *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003), which holds that an offender is not entitled to a pre-registration hearing under conviction-based registration statutes like Wisconsin's. The court concludes that Wisconsin afforded Murphy an adequate opportunity to show that he should not have to register as a sex offender. Accordingly, Murphy received all the process he was due, and thus

his constitutional claim fails. The court will grant defendants' motion for summary judgment, deny Murphy's motion, and dismiss the case.

The court need not, and therefore will not, reach the question of whether, as a matter of Wisconsin state law, Murphy is required to register as a sex offender in Wisconsin.

BACKGROUND

Except where noted, the following facts are undisputed.

In 1979, Murphy, then age 19, sexually assaulted an adult woman in California. On January 17, 1980, Murphy was convicted of rape in Los Angeles County, California. Murphy was released from prison on September 7, 1986; he was on parole in California until March 6, 1990.

Murphy moved to Wisconsin in March 2001. A few months later, Murphy was involved in a fight, which led to his conviction for aggravated battery. The battery conviction was not a sex offense, and the precipitating events did not involve any sexual elements. When Murphy's release date drew near, the DOC determined that: (1) there was no reason to civilly commit Murphy as a sexually violent person; (2) Murphy did not require sex offender treatment; and (3) the DOC did not need to release a "special bulletin" (required for sex offenders) before Murphy's release.

On February 17, 2009, the DOC released Murphy from his incarceration for the battery conviction. Three days later, Murphy received a letter from the State of Wisconsin Sex Offender Registration Program stating that he was required to register as a sex offender. At some point before Murphy received the letter, defendant Sue Klemann, a Wisconsin sex offender registry specialist, allegedly determined that Murphy was required to register.

Murphy also alleges that as far back as 2007, while Murphy was still incarcerated, defendant Gail Faust, a DOC employee, placed Murphy on the Wisconsin Sex Offender Registry.[1] Murphy complied with the letter's instructions and registered under protest. Dkt. 16-6. Murphy did not receive a hearing on whether his California conviction required him to register in Wisconsin. Murphy continued to register as a sex offender in Wisconsin until July 2012.

In 2012, Murphy retained attorney Erik Johnson to challenge his Wisconsin registration obligations. In June 2012, in response to his inquiry on behalf of Murphy, attorney Johnson received an email from Janet Neeley, a deputy attorney general for the California Department of Justice. Neeley explained that "[s]ince [Murphy] is residing out of state, he is not currently required to register in California." Dkt. 16-10, at 3. Within days, Wisconsin Sex Offender Registration Specialist Tina Gensler apologized to Murphy and removed him from the Wisconsin Sex Offender Registry. Murphy remained free from Wisconsin registration requirements until October 2014.

Murphy engaged his current counsel, Jeff Scott Olson, to pursue a possible claim for damages arising from the apparently wrongful imposition of the registration requirement. In the fall of 2014, attorney Olson submitted an open records request to the DOC, seeking information regarding Murphy's registration. Brandon Smith, a program support supervisor for Wisconsin's Sex Offender Registry Program, responded to the records request. Smith's

---

[1] Allegations concerning defendants Klemann and Faust are taken from Murphy's Second Amended Complaint because Murphy did not bring these individuals into the case until after the parties had briefed summary judgment and had submitted their proposed findings of fact. Defendants Klemann and Faust have not yet responded to Murphy's allegations (they are not required to answer Murphy's Second Amended Complaint until April 5, 2016). However, the nature of their involvement in the underlying facts is ultimately immaterial to the court's analysis here.

review of Murphy's California conviction prompted Smith to contact the California Department of Justice to obtain information regarding Murphy's registration status there. Smith corresponded with Kerry Ramos, a deputy attorney general for the California Department of Justice who dealt with issues regarding the California Sex Offender Registry. Ramos explained the California registration status of out-of-state offenders in an email to Smith:

> An individual who is convicted of a registrable offense pursuant to California Penal Code section 290 is required to register for life pursuant to California Penal Code section 290 while residing, working or attending school in California. When a California registrant moves out of California, the registrant's California Sex and Arson Registry (CSAR) record remains active; however, it states that the subject has relocated out-of-state. Additionally, the registrant's information is removed from the California Megan's Law public website if the registrant's offense was previously posted pursuant to Penal Code section 290.46.

Dkt. 16-11, at 3. In other words, Murphy was listed on California's sex offender registry as having relocated out-of-state, but he had been removed from California's publicly available sex offender website. In response, Smith asked: "Just to clarify, Paul Murphy is registered with California?" Ramos responded: "Yes." *Id*.

On October 22, 2014, Murphy received a letter from defendant Deborah Rychlowski, a DOC attorney, informing him that he is required to register as a sex offender in Wisconsin. Rychlowski's letter provided, in relevant part:

> While you remain active on the California Sex Offender Registry, California no longer displays your information to the public. If you return to California, you would be put back on California's Registry website. DOC has been advised by the California Attorney General's Office that you are registered in California. As such, because you are registered in California, the Wisconsin Department of Corrections Sex Offender Registry has determined that you are required to register in Wisconsin per Sect. 301.45(1g)(f) Wis. Stats.

4

*Id.* at 1. Again, Murphy complied to avoid penalties for failing to register, and this lawsuit followed.

The court has subject matter jurisdiction over Murphy's 42 U.S.C. § 1983 claim pursuant to 28 U.S.C. § 1331, because it arises under federal law.

ANALYSIS

Murphy contends that defendants incorrectly required him to register as a sex offender in Wisconsin, and required him to register without affording him an opportunity to be heard on the issue, all in violation of his Fourteenth Amendment procedural due process rights. Murphy and defendants both move for summary judgment on the due process claim. (Defendants also contend that they are entitled to qualified immunity, but the court will not reach that issue because defendants have not violated Murphy's constitutional rights.)

The court must grant summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In this case, the material facts are those relating to Murphy's California conviction, and those facts are undisputed. The disputed issues are questions of law, particularly whether the DOC's treatment of Murphy's registration status violated his due process rights under the Constitution.

**A. Murphy was not entitled to a pre-registration hearing**

The Fourteenth Amendment's Due Process Clause prohibits states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]" U.S. Const. Amend.

5

XIV, § 1. To prevail on a section 1983 procedural due process claim, Murphy must demonstrate that he: (1) has a cognizable liberty or property interest; (2) suffered a deprivation of that interest; and (3) did not receive due process. *Khan v. Bland*, 630 F.3d 519, 527 (7th Cir. 2010).

The court will assume, without deciding, that Murphy has suffered a deprivation of some protected liberty interest. To be forced to register as a sex offender is severely stigmatizing, but, as Murphy acknowledges, freedom from stigma is not, by itself, a protected liberty interest. *Paul v. Davis*, 424 U.S. 693, 712 (1976) ("[W]e hold that the interest in reputation asserted in this case is neither 'liberty' nor 'property' guaranteed against state deprivation without due process of law."). But Wisconsin's sex offender registration requirement imposes specific restrictions on those registered, beyond mere damage to reputation, including: prohibitions on photographing children (Wis. Stat. § 948.14(2)(a)); limits on changing one's name or using a name other than the one registered with the DOC (Wis. Stat. § 301.47(2)); local ordinance restrictions regarding where registered offenders may live; and requirements to notify the state of any change of address, and any email addresses, websites, or screen names used (Wis. Stat. § 301.45(2)(a)(6m), (2)(g), (4m)). If required to register while on probation, the DOC has the authority to impose additional reporting restrictions, including forcing registrants to inform specific individuals of the fact that he or she is a registered sex offender. *See State ex rel. Kaminski v. Schwarz*, 2001 WI 94, ¶ 79, 245 Wis. 2d 310, 630 N.W.2d 164. Although Murphy cites no authority that expressly holds that these restrictions deprive registrants of a protected liberty interest, the court will assume, in light of the foregoing, that they do. Murphy's registration subjects him to restrictions beyond damage to his reputation.

6

But Murphy comes up short on the third element. "In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law.*" *Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original). Accordingly, "to determine whether a constitutional violation has occurred, it is necessary to ask what process the State provided, and whether it was constitutionally adequate." *Id.* at 126. Murphy contends that he was entitled to a pre-registration hearing and the opportunity to show that the DOC should not have required him to register. But the Supreme Court has already determined that offenders in Murphy's position are not entitled to any pre-registration opportunity to be heard.

In *Connecticut Department of Public Safety v. Doe*, the Court considered whether sex offenders were entitled to a hearing before being included on Connecticut's public sex offender registry. 538 U.S. 1 (2003). The respondent, a convicted sex offender, contended that the state should have afforded him the opportunity to demonstrate that he was not dangerous and that, as a result, the registration requirement should not apply to him. But Connecticut's sex offender registration requirements applied to sex offenders by virtue of their convictions, without regard to whether the offender was dangerous at the time of registration. The Court recognized that in cases such as *Wisconsin v. Constantineau*, 400 U.S. 433 (1971), and *Goss v. Lopez*, 419 U.S. 565 (1975), due process required the state to provide a pre-deprivation hearing, to create the opportunity to prove or disprove facts pertinent to the deprivation to be imposed. *Doe*, 538 U.S. at 7. But the Court reasoned that under Connecticut's registration law, *no* facts were relevant to the decision to require registration: the registration requirement flowed automatically from the fact of conviction. *Id.*

Accordingly, where the requirement to register turns exclusively on the offender's conviction, the offender receives due process in the criminal proceedings that resulted in the qualifying conviction. *Id.* The Court concluded that "[p]laintiffs who assert a right to a hearing under the Due Process Clause must show that the facts they seek to establish in that hearing are relevant under the statutory scheme." *Id.* at 8. Under a conviction-based sex offender registration statute, due process does not require a pre-registration hearing.

Wisconsin's sex offender registration statute is conviction based, just like Connecticut's. *See State v. Smith*, 2010 WI 16, ¶ 37 n.30, 323 Wis. 2d 377, 780 N.W.2d 90 (recognizing that Wisconsin's sex offender registration statute satisfies procedural due process requirements in light of *Connecticut Department of Public Safety v. Doe*). Murphy may not be in the exact position as the respondent in *Doe*, but the rule established in *Doe* applies nonetheless. Murphy had no material *facts* to present to the DOC pertaining to his registration requirement. He had only the argument he now presents to this court, which is a legal argument about the correct interpretation of Wisconsin's sex offender registration law and how it applies to a California sex offense conviction. Nothing in *Doe* suggests that due process requires a pre-registration hearing so that the offender can challenge the DOC's interpretation of the Wisconsin sex offender registration statute.

For these reasons, Murphy was not entitled to a pre-registration hearing.

**B.  Murphy received all process he was due**

Supreme Court precedent clearly establishes that Murphy was not entitled to the pre-registration hearing he requests. But that is not the end of the analysis because the state must provide some post-deprivation opportunity to challenge a potentially wrongful imposition of the sex offender registration requirement.

8

Murphy had that opportunity here. In 2012, his first attorney presented Murphy's argument to the DOC. And, for a time at least, Murphy persuaded the DOC that he did not have to register in Wisconsin. The DOC later reevaluated that determination and reversed itself after investigating Murphy's California registration status, and Defendant Rychlowski explained the basis for that determination in her letter to Murphy. Murphy did not receive—and was not entitled to receive—a pre-registration hearing, but the DOC: (1) afforded him a meaningful post-deprivation opportunity to show that the DOC should not require him to register as a sex offender; and (2) explained why it ultimately disagreed. And if after an informal exchange with the DOC an offender still believes that the DOC is imposing registration requirements contrary to Wisconsin's sex offender registration statute, he has the opportunity to petition a Wisconsin court for a writ of mandamus to compel DOC officials to correctly interpret and apply Wisconsin's registration statute. *See, e.g., In re Doe*, 2009 WI 46, ¶ 10, 317 Wis. 2d 364, 766 N.W.2d 542 (mandamus action to interpret statute and compel its application).

The court determines whether the post-deprivation process Murphy received comports with due process using the framework set out in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976), which requires the court to consider the balance between the private interest at stake and the government's interest, the risk of erroneous deprivation, and the probable benefits and costs of additional protections. The government's principal interest in mandating sex offender registration is to protect the public, particularly children, from sex offenders. Even though Wisconsin's registration statute, like most conviction-based schemes, paints with an extremely broad brush, it undeniably serves a legitimate interest in public safety. The resulting liberty restrictions are not so great as incarceration or even probation or supervised

9

release. Registration may limit where an offender can live or what employment he may hold, but the collateral consequences are not so devastating as to deprive registrants of a home or a job. *Cf. Goldberg v. Kelly*, 397 U.S. 254, 264 (1970) (holding that meaningful pre-deprivation process was necessary—and that post-deprivation remedies alone were insufficient—because the private interest at issue, welfare benefits, provided "the means to obtain essential food, clothing, housing, and medical care," and "termination of aid pending resolution of a controversy over eligibility may deprive an eligible recipient of the very means by which to live while he waits"). Murphy's interest here is certainly important enough to warrant some meaningful safeguard against an erroneous DOC determination, but the potential injury to Murphy's interest is relatively moderate and reversible.

In the vast majority of cases involving a conviction-based statute like Wisconsin's, the risk that sex offender registration requirements would be erroneously imposed is exceedingly low because the application of the statute to most offenders will be straightforward. But parts of Wisconsin's sex offender registration statute are complex and confusing: the fact that the DOC reversed itself in 2012, and then re-reversed itself in 2014, shows that cases involving out-of-state convictions pose complications that are not always easily resolved. Still, the question Murphy presents here regarding his own registration will not always require case-by-case evaluation. Once the application of Wisconsin's sex offender registration law is correctly decided, future cases like Murphy's will also be a matter of routine.

Balancing the *Mathews v. Eldridge* factors shows that this is a case in which the post-registration remedies were adequate: the DOC provided its reasons for requiring Murphy to register, and the state provides a judicial remedy if informal resolution proves unsatisfactory. Protections such as these are adequate when the deprivations are moderate, like the ones

10

Murphy faces. *See, e.g.*, *Morrissey v. Brewer*, 408 U.S. 471, 489 (1972) (holding that an important part of due process in the context of parole revocation is "a written statement by the factfinders as to the evidence relied on and reasons for revoking parole"); *Mathews*, 424 U.S. at 345-46 ("A further safeguard against mistake is the policy of allowing the disability recipient's representative full access to all information relied upon by the state agency [in reaching its decision to discontinue benefits]."). *See also Memphis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 19 (1978) ("[W]here the potential length or severity of the deprivation does not indicate a likelihood of serious loss and where the procedures underlying the decision to act are sufficiently reliable to minimize the risk of erroneous determination, government may act without providing additional 'advance procedural safeguards[.]'").

CONCLUSION

Murphy received the process he was due, and defendants are entitled to summary judgment on Murphy's claim that defendants violated his procedural due process rights under the Fourteenth Amendment. Because the court concludes that defendants have not violated Murphy's constitutional rights, the court will also dismiss Murphy's state-law claim for indemnification.

The court reaches this result without deciding what it means to be "registered as a sex offender in another state" under Wis. Stat. § 301.45(1g)(f). The parties devote significant briefing to this issue, which would be decisive of whether the DOC wrongly required Murphy to register in Wisconsin. The wise custom in this circuit is to decline to decide state-law questions when no federal questions remain, especially when the answer to the state-law question is not absolutely clear. *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir.

1994). Besides, neither side has asked the court to decide this issue directly; they raise the issue only in the context of Murphy's due process claim. Where due process questions are not implicated, the Constitution leaves it to the states to ensure that their laws are interpreted and implemented correctly, and Murphy may present the question to a Wisconsin court.

ORDER

IT IS ORDERED that:

1. Plaintiff Paul Murphy's motion for partial summary judgment, Dkt. 13, is DENIED.

2. Defendants' motion for summary judgment, Dkt. 18, is GRANTED.

3. The clerk of court is directed to enter judgment for defendants and close this case.

Entered February 25, 2016.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge